## CIRCUIT COURT OF WASHINGTON COUNTY

Patrick J. Mannix

v.

Washington County
Board of Supervisors

### April 29, 1992

### Case No. (Chancery) 92–62

BY JUDGE CHARLES H. SMITH, JR.

This matter is before the court upon petition of Mr. Mannix *pro se* alleging a violation of the Freedom of Information Act by the Washington County Board of Supervisors as it pertains to executive sessions. Specifically, the petitioner contends that at the regular meeting of the board held on January 30, 1992, an executive session was called for and held, and during that session, a subject matter was discussed which was not indicated as a stated purpose for the executive session as required by statute.

Section 2.1–344 of the Freedom of Information Act provides for executive sessions of public bodies and enumerates the purposes for which the same may be called. Section 2.1–344.1 of the Code delineates the manner in which executive sessions may be called. That section provides as follows:

A. No meeting shall become an executive or closed meeting unless the public body proposing to convene such meeting shall have taken an affirmative recorded vote in open session to that effect, by motion stating specifically the purpose or purposes which are to be the subject of the meeting, and reasonably identifying the substance of the matters to be discussed. A statement shall be included in the minutes of the open meeting which shall make specific reference to the applicable exemption or exemptions from open meeting requirements . . . .

> A general reference to the provisions of this chapter or authorized exemptions from open meeting requirements shall not be sufficient to satisfy the requirements for an executive or closed meeting . . . .

The stated purpose of the executive session held during the board meeting of January 30, 1992, was to consider land use and acquisition in the Exit 7 area. All seven members of the board were present in that executive session along with the county attorney, county administrator, and Mr. Frank Canter, resource manager for the county. Apparently at the commencement of that session, Mr. Canter, without prior revelation to anyone else present, asserted to the group a subject matter of grave important to the county but not related to the stated purpose of the session. All board members agreed that the subject matter was of a very serious and sensitive nature. Some limited discussion did ensue on the topic until it was determined that the matter had been referred to the Commonwealth's Attorney to pursue. No vote on the issue was taken. At the conclusion of the executive session, a recorded vote of 6–0–1 was taken to the effect that only those matters that were the stated purpose of the executive session were discussed in the executive session.

At the commencement of the evidentiary hearing herein on April 7, 1992, the attorney for the board made an opening statement in which it was conceded that a regrettable mistake had been made by the board in this executive session. Each board members in his testimony stated that he regretted the incident and wished that it had never come up. The testimony did differ as to just when the topic came up and how long it was discussed.

At the conclusion of the evidentiary hearing on April 7, 1992, the court took the matter under advisement and then held an *in camera* meeting with the petitioner and the county attorney so that the subject matter of the topic discussed might be revealed to the court privately to aid the court in its deliberations. While the court does deem the subject to be of a serious and sensitive nature, in view of this and the fact that it is now in the hands of the proper authorities to pursue, I do not believe any useful purpose will be served by specifically stating the subject matter at this time. Suffice to say that it involved the questionable use of county funds.

The petitioner herein regularly attends the meetings of the county board of supervisors and scrutinized their business proceedings very

carefully. Being the astute and concerned citizen that he is, he was quick to pick up on the fact that a 6–0–1 vote was recorded at the conclusion that January 30, 1992, executive session (the one being an abstention). He pursued this during the public comments section of the next regular board meeting held on February 10, 1992, and as a result of the information gleaned from that, determined that a violation of the Freedom of Information Act had occurred. He filed this petition seeking redress on account of denial of the rights and privileges conferred by the Act. He requested injunctive relief and civil penalties for willful and knowing violation.

Section 2.1–346 of the Code provides in part as follows:

> Any person . . . denied the rights and privileges conferred by this chapter may proceed to enforce such rights and privileges by filing a petition for mandamus or injunction . . . . addressed to the general district court or the court of record in the county or city from which the public body has been elected or appointed to serve and in which such rights and privileges were so denied . . . .

This section goes on to provide for the recovery of attorney's fees and costs by the petitioner who substantially prevails on the merits of the case. Section 2.1–346.1 requires the court to impose civil penalties upon members of public bodies individually if the court finds that a violation of this chapter was willfully and knowingly made. It is significant to note that all of these code sections refer specifically to the meetings of public bodies. Section 2.1–341 of the code defines public body to include the "governing bodies of counties." The governing body of Washington County is, of course, the elected members of the board of supervisors.

The purpose of the Freedom of Information Act as stated in § 2.1–340.1 of the code is to "ensure to the people of this commonwealth ready access to records in the custody of public officials and free entry to meetings of public bodies wherein the business of the people is being conducted." That section goes on to say that "any exception or exemption from applicability shall be narrowly construed in order that no thing which should be public may be hidden from any person." Thus, it is abundantly clear that the people's business must be conducted by the people's representatives in public. There are many exceptions to the rule, and necessarily so, which allow private or executive sessions of the public body in order to discuss matters of a

confidential nature. Even then an affirmative vote of the public body must be recorded in public and the subject matter to be discussed in the private session must be reasonably identified along with the specific reference to the applicable exemption provided by statute. Section 2.1–344.1 of the code. The public body is permitted to allow non-members to attend these closed meetings if their attendance is deemed necessary to assist them in consideration of the topic to be discussed. Mr. Frank Canter, for whatever reason, was in attendance at the executive session in question. Mr. Canter is not an elected public official. He is the county resource manager, a county employee who serves at the pleasure of the county board of supervisors. As such he is not subject to the same rules and regulations of the act as are the elected members of the board. Mr. Canter was a non-member who was invited into the board's executive session in order to aid them in their discussions. As such he was not subject to the requirements of the Freedom of Information Act, and no board member can be held responsible for the spontaneous utterances that any such non-member might unwittingly make. Where the board made its mistake in this instance was in taking up the discussion after the "cat was out of the bag," so to speak. In retrospect, the proper action would have been for the chairman to simply declare the non-member out of order and forbid any further discussion on the topic.

I believe the preponderance of the evidence establishes that the limited discussion that did ensue on the subject was not in an attempt to resolve the issue but in a good faith effort to assure that it was brought to the attention of the proper authorities for further investigation. In consideration of all of which, I am of the opinion that neither the board collectively nor any individual member has committed a willful and knowing violation of the Act so no civil penalties will be assessed. Since, however, the board has conceded and the court finds that a technical violation did occur, the petitioner will be entitled to recover his costs expended in this regard.

The court has been advised by counsel for the county that appropriate measures have been taken to enlighten all board members with regard to the specifics of the Freedom of Information Act and to assure strict compliance in the future. The county attorney should take steps to ensure that this is a continuing practice for the benefit of all future administrations. In addition, the court suggests that procedures be adopted that will require the board chairman at the com-

mencement of any executive session to admonish any non-member in attendance to restrict his comments to the stated purpose or purposes of the executive session.